■ Ansonia Realty Co., Respondent-Appellant, v Ansonia Associates et al., Appellants-Respondents.—Order and judgment (one paper) of the Supreme Court, New York County (Shorter, J.), entered March 17, 1987, upon a nonjury verdict in favor of plaintiff-respondent-cross-appellant on the second and third causes of action and adjudging defendants-appellants-cross-respondents jointly and severally liable for the return of respondent's $2,500,000 down payment without interest, and less appellants' direct out-of-pocket expenses, unanimously modified, on the law and the facts, to strike that portion of said order and judgment deducting appellants' out-of-pocket expenses from respondent's award, to strike the third, fourth, and fifth decretal paragraphs referring the issue of appellants' out-of-pocket expenses for a hearing and report, to adjudge appellants jointly and severally liable for payment of interest on the $2,500,000 down payment, and otherwise affirmed, without costs.

Appellant Ansonia Associates, owner of the Ansonia Apartments on Broadway in Manhattan, entered into a contract to sell the building to respondent, Ansonia Realty Co., in October 1984. A down payment of $2,500,000 of the $41,000,000 pur-

chase price was made upon signing of the contract. Approximately $18,100,000 was to be paid at the closing, at which time respondent was to assume a $20,400,000 mortgage on the premises held by Colonial National Mortgage Company. The mortgage was subject to a regulatory agreement between the seller and the United States Department of Housing and Urban Development (HUD) which prohibited transfer of the premises without the prior written approval of the Secretary of HUD. In the event the seller failed to obtain such approval, the closing date was to be postponed for 30 days and, if no approval was forthcoming by that time, the purchaser had the option to cancel the contract and have the down payment returned in full with interest, upon three days' notice to the seller.

Under the contract, there were four possible dates on which the closing could occur: February 18, 1985, the "inside closing date"; April 15, 1985, the "outside closing date", if the purchaser so notified the seller not later than February 14, 1985, and made an additional down payment of $1,000,000; or, in the event that HUD approval had not been obtained, 30 days after either the inside or outside closing date; or at such time as the New York State Department of Taxation issued a tentative assessment and return. In order to obtain this last document, the seller was required to file both a transferee's and transferor's questionnaire with the State Department of Taxation, and the purchaser was to deliver its completed questionnaire to the seller not later than 30 days before the closing date.

Due to the complexity of the HUD regulations and procedures, the seller engaged a former HUD employee, Francis Sweeny, to assist it in gaining the agency's approval. Unbeknownst to respondent, Mr. Sweeny added a new page 54 to the contract of sale which contained the following language: "This contract is expressly conditioned upon preliminary approval by HUD of the transaction * * * None of the terms and conditions of this sale agreement shall be effective prior to such HUD approval. Buyer will not take possession of the project nor assume the burden and benefits of project ownership prior to such approval by HUD." Although a meeting was held in November 1984 at which various documents were given to the parties for their signature, Mr. Sweeny did not present the new page 54 to respondent or inform it of the language therein. On February 13, 1985, HUD sent Mr. Sweeny a letter giving its preliminary approval of the transfer subject to certain terms and conditions, one of these being

that the parties execute an addendum to the contract containing language similar to that of Mr. Sweeny's page 54 and further providing that the buyer "shall have no right to effect a lien upon this project or the assets, rents, issues or profits thereof." Under section 14.05 of the contract, however, the purchaser was expressly given a lien against the premises for the amount of the down payment.

Upon receiving HUD's letter, appellant wrote to respondent saying that it had complied with all of its obligations and, as respondent had not elected the outside closing date, the closing would be held on February 28, 1985. Appellant also pointed out that the transferee's questionnaire had not been submitted 30 days before the closing and a copy was requested forthwith. One week later, respondent's counsel forwarded the transferee's questionnaire to appellant with a letter questioning whether all the conditions precedent to closing had been met. Counsel specifically noted that although appellant stated that the HUD approval had been received, respondent had not seen any written document confirming the fact. By letter dated February 26, appellant's counsel again affirmed that the seller had obtained a letter from HUD approving the transfer and that this letter would be submitted to the purchaser at the closing on February 28.

At that meeting, which lasted several hours, respondent refused to accept HUD's conditional preliminary approval on the ground that this was not the HUD approval contemplated under the contract. Consequently, it did not tender the purchase price. However, neither party declared a default at any time during the meeting. Nevertheless, by letter dated February 28, appellant deemed respondent to be in default and instructed its counsel, Thomas Hertel of defendant-appellant law firm Dechert Price and Rhoades, who was also the escrow agent, to deliver the down payment with accrued interest to appellant. Mr. Hertel complied with this instruction.

Respondent sued to recover its down payment, as well as compensatory damages for breach of contract, and punitive damages for the seller's alleged fraud and the escrow agent's willful disregard of the contract. Supreme Court found that the seller terminated the contract prematurely by preempting the escrow fund and that the payment of those funds by the seller's attorney, who was contractually bound to act as an independent, neutral escrow agent, was unjustified. Although Supreme Court noted several failings by the purchaser, including the untimely submission of the transferee's questionnaire, it found that respondent did not breach the contract even

though it did not diligently seek secondary financing or a wraparound mortgage to replace the HUD-insured mortgage.

We concur in the findings of the court below but do not agree with the decision to deny respondent interest on its down payment or to award appellants damages for out-of-pocket expenses. Section 2.04 of the contract provides that if the closing "fails to occur for any reason other than the Purchaser's default" the seller shall return the down payment "together with any interest thereon". CPLR 5001 (a) also provides for interest on awards recovered for breach of contract "or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property".

The Supreme Court's finding that the seller breached the contract is amply supported by the evidence. Appellant's contention that the purchaser's rights would have been unimpaired if the waiver of the vendee's lien required by HUD had been executed simultaneously with the passage of title at the closing is without merit. Appellant ignores the fact that HUD imposed several conditions which Supreme Court found were not readily capable of performance. Moreover, under then-existing HUD regulations, the preliminary approval could be rescinded if the seller's attorney could not make the required certifications to HUD within 10 days. Appellant's attorney conceded at trial that nothing in the contract required respondent to waive its vendee's lien. Appellant's contention that HUD's regulation requiring such a waiver should be read into the contract notwithstanding an express provision therein granting respondent a vendee's lien was properly rejected by Supreme Court. Given that HUD's preliminary approval was conditioned on waiver of the vendee's lien, among other things, it is clear that appellant did not have the required HUD approval in hand on February 28, 1985, and therefore, under terms of the contract, respondent was entitled to a 30-day postponement of the closing.

Appellant acted to defeat respondent's right to postpone the closing or, if no HUD approval was forthcoming, to cancel the contract when it concealed the contents of HUD's letter until February 28 and when it insisted on a closing "in escrow" in violation of the contract. Under section 9.07, there was to be no closing until the Department of Taxation issued its tentative assessment and return and this had not been done. Respondent's untimely submission of the transferee's questionnaire, a preliminary step in obtaining the tentative assessment, was not an event of default under the contract *(see,*

*Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 112-113 [1984]), and respondent's explanation for the delay— that it was waiting to see the transferor's questionnaire in order to reconcile its questionnaire with the one submitted by appellant—is a reasonable one. Inasmuch as appellant breached the contract and respondent did not, it was not entitled to recover its out-of-pocket expenses.

We also agree with Justice Shorter's conclusion that a neutral escrow agent should have either sought the purchaser's consent to release the escrow funds or, failing to obtain such consent, should have retained the funds pending a declaration by a court. Under terms of the contract, the escrow agent is only liable for acts or omissions taken in bad faith or in willful disregard of the contract. As the seller's attorney, Mr. Hertel was aware of the conditional nature of HUD's preliminary approval and that the purchaser's cooperation would be required in satisfying those conditions prior to the closing. He, however, aided the seller in preventing the purchaser's compliance by refusing to reveal this information to respondent. Furthermore, he is charged with knowledge of the contractual provision indefinitely postponing the closing until required documents were received from the New York State Department of Taxation. These documents were not in hand on February 18, 1985, and therefore the purchaser was under no obligation to perform on that date. Thus, the escrow agent's delivery of the escrow funds to the appellant, in disregard of the express contractual provisions, renders him liable to respondent, as Supreme Court found. Concur—Kupferman, J. P., Sandler, Sullivan and Rosenberger, JJ.